UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**MICHELLE M. DONOHOE,**

**Plaintiff,**

**-v-**                                             **6:10-CV-67 (NAM/GHL)**

**HARTFORD LIFE INSURANCE COMPANY,**

**Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Olinsky & Shurtliff
Howard D. Olinsky, Esq., of counsel
One Park Place
300 South State Street, Suite 520
Syracuse, New York 13202
Attorney for Plaintiff

Sedgwick, Detert, Moran & Arnold LLP
Michael H. Bernstein, Esq., of counsel
125 Broad Street, 39th Floor
New York, New York 10004
Attorney for Defendant

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

Plaintiff brings this action under the Employee Retirement and Income Security Act of 1974 ("ERISA") §502(a)(1)(B); 29 U.S.C. §1132(a)(1)(B), to recover unpaid long term disability benefits under an employee benefit plan and to declare her right to future benefits. Defendant moves (Dkt. No. 12) for summary judgment on the ground that it properly terminated plaintiff's benefits. Plaintiff moves (Dkt. No. 18) for summary judgment. As set forth below, the Court grants defendant's motion, denies plaintiff's motion, and dismisses the action.

## AMENDED COMPLAINT

In her amended complaint (Dkt. No. 8), plaintiff claims as follows.  While employed by the Golub Corporation as a customer service manager, plaintiff obtained long term disability insurance coverage under the company's employee welfare benefit plan ("Plan").  The benefits under the Plan are funded by a group policy issued by defendant, which acts as both claims administrator and fiduciary.  The Plan defines disability as follows:

> Definition of Disability
> Disability or Disabled means that during the Elimination period and for the next 24 months you are prevented by:
> 1. Accidental Bodily Injury;
> ***
> From performing one or more of the Essential Duties of Your Occupation and as a result your Current Monthly Earning are no more than 80% of your Indexed Pre-disability Earnings. After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.

On November 12, 2002 defendant determined that plaintiff was totally disabled within the meaning of the Plan and granted her long term disability benefits.  Thereafter, defendant paid benefits to plaintiff as a result of conditions including severe back pain, surgical fusion of L3-L4 and L4-L5, second surgical fusion of L3-L4, neck pain, radicular pain in legs, myocardial infarction, periodic chest pain, and hypertension.  Defendant discontinued the benefits on July 31, 2008.  Plaintiff filed an administrative appeal, which defendant denied on May 28, 2009.  Plaintiff has exhausted all administrative remedies.

Plaintiff states that beginning on November 12, 2002, she has been totally disabled within the meaning of the Plan, has not worked, and has had no earnings.  She claims that defendant's determination that she is not totally disabled within the meaning of the Plan is contrary to the terms of the Plan, contrary to the medical evidence, unreasonable, and an abuse of discretion.

-2-

Plaintiff seeks a monetary award in the amount of unpaid past benefits as well as a determination "[c]larifying and declaring that the Plan is obligated to pay plaintiff long term disability benefits in the future as required by the Plan."  She also seeks attorneys fees and costs.

## THE ADMINISTRATIVE DECISION

On November 29, 2007, Claim Specialist Jeanne M. Stowell began defendant's annual review of plaintiff's continued eligibility.  On July 31, 2008, Stowell wrote to plaintiff advising: "We have completed our review of your claim for continued benefits and have determined that you no longer meet the definition of Disabled."  Stowell noted that, as of May 13, 2005, the applicable definition of disabled under the policy "changed from own occupation to any occupation."  She then summarized the records in plaintiff's claim file, as follows.

> An attending physician's statement completed by Celesta Hunsiker, MD, dated July 2, 2007, provided a diagnosis of degenerative disc disease of the lumbar spine. Dr. Hunsiker reported symptoms of back pain with radiation and exam findings of chronic back pain and limited range of motion. Dr. Hunsiker noted that you are treated approximately every six months. Dr. Hunsiker provided the following restrictions and limitations: No prolonged standing, walking limited distances only, no lifting/carrying, limited overhead work, no pushing/pulling, may drive, and may sit provided you are able to stand and walk frequently as needed for pain.

> During your November 29, 2007 telephone interview, you informed that you remain totally disabled due to low back pain with radiculopathy. You informed that you experience numbness on the side portion of your left lower extremity and significant pain in the entire left lower extremity. You also informed that you suffer from hypertension which is currently controlled with medications and you are status post a myocardial infarction in February 2005 with no current complaints. You reported that you are capable of driving with no restrictions, capable of sitting in a wood straight back chair for approximately fifteen minutes at a time, driving/riding in a car for approximately twenty-five minutes at a time, capable of sitting in a recliner for a couple of hours at a time, capable of standing/walking for approximately ten minutes at a time with no assistive devices, walking up/down stairs with no restrictions, lifting/carrying up to ten pounds, and performing activities requiring full use of your hands (ie. writing/typing) with no restrictions. You

also reported that you obtain approximately two and a half to three hours of relief following the use of Neurontin. You further reported that you treat with Dr. Hunsiker for yearly physicals and as needed for any other medical conditions; you were no longer treating with Dr. Buckley and did not anticipate any future treatment unless surgical intervention was needed; and, you were no longer treating with Dr. Catania and did not anticipate any future treatment.

Medical records received from Slocum-Dickson Medical Center, PLLC, the office of Celesta Hunsiker, MD, document that you are undergoing treatment for coronary artery disease status post a myocardial infarction, hypertension, hyperlipidemia, migraine headaches, degenerative disc disease of the cervical and lumbar spine status post a lumbar fusion in February 2003, lumbar decompression in April 2003, and revision of a lumbar decompression in June 2005, and chronic pain. Your January 19, 2006 musculoskeletal exam documents normal gait and station, no deformity, no tenderness, no pain, full range of motion, and no tender points to suggest fibromyalgia.

Medical records received from Slocum-Dickson Medical Center, PLLC, the office of Rudolph Buckley, MD, document that you were underwent treatment for low back pain with left sided radiculopathy. Your April 24, 2006 x-ray of the lumbar spine revealed scoliosis, degenerative joint disease, and osteopenia. Your April 24, 2006 office note documents full range of motion of the right lower extremity and no tenderness to palpation, except mild right greater trochanteric pain. Your November 2, 2006 office note documents that you have been working and notes that you have been waiting for removal of hardware.

Medical records received from New York Pain Management, the office of Joseph Catania, MD, document that you underwent treatment for lumbar, bilateral hip, and bilateral tower extremity pain. Your April 12, 2006 office note documents exam findings of an antalgic gait, lumbar paraspinous tenderness, 30 degrees of flexion, 10 degrees of extension with lateral rotation, normal hip flexion and extension, negative flip, no swelling, tenderness, crepitation or discoloration of the bilateral lower extremities, full, smooth range of motion without limitations, peroneal eversion, plantar Hexion and extension are equal and symmetric bilaterally, normal sensation to touch, pleasant mood and affect, and intact judgment. Your April 12, 2006 office note documents that you are independently active for thirty minutes per day. Your July 12, 2006 office note documents exam findings of a normal gait, lumbar vertebral tenderness, no swelling, tenderness, crepitation or discoloration of the bilateral lower extremities, full, smooth range of motion without limitations, negative bilateral flip tests, plantar flexion and extension are equal and symmetric, mood and affect are pleasant and appropriate, intact

judgment, and normal insight without delusions or hallucinations. Your November 13, 2006 office note documents exam findings of normal gait/station, slight paraspinous tenderness, left greater than right, no SI joint tenderness, no swelling, tenderness, crepitation or discoloration of the bilateral lower extremities, and peroneal eversion, plantar flexion and extension, and knee flexion and extension are equal and symmetric. Your March 12, 2007 office note documents exam findings of an antalgic gait with a noted limp on the left, paraspinous tenderness bilaterally, tenderness of the left lower extremity, decreased range of motion of the left lower extremity, observable atrophy of the left lower extremity, and normal sensation to touch. Your August 6, 2007 office note documents exam findings of normal gait/station, lumbar paraspinous tenderness, 10 degrees of flexion, extension, and lateral rotation, normal hip flexion and extension, no swelling, tenderness, crepitation, or discoloration of the bilateral lower extremities, smooth, full range of motion of the bilateral lower extremities, and plantar flexion and extension are equal and symmetric bilaterally.

Throughout your claim file, as well as in your June 18, 2008 interview, you relayed that you were prevented from returning to any occupation due back and leg pain. You also relayed that things like standing, walking, and sitting intensify the pain. You further relayed that you cannot stand for any length of time and can sit for maybe an hour. During this interview, you were asked to describe the symptoms and medical conditions that prevent you from returning to work in any occupation. Your responses were transcribed by Investigator Lombardo and put into statements, which you were given the opportunity to review, correct, and sign. Your statements are quoted here in part. Investigator Lombardo's observations are also noted here in part.

You described your maximal level of functionality/activity as: walking a maximum of ten minutes with a slow gait and a limp, standing for a maximum of fifteen minutes, shopping for a maximum of ten to fifteen minutes, lifting/carrying a maximum of ten pounds, bending or flexing forward to touch your knees, squatting to sit in a chair, but not to the floor, kneeling on your right knee only, pushing/pulling something that offers moderate resistance, reaching overhead, to the front, to the sides, and below the waist, walking up/down stairs with no problem, performing activities that require full use of your hands and fingers, driving for a maximum of thirty minutes, and sitting for a maximum of twenty minutes. You also reported that you could probably twist at the waist, but noted that this is not comfortable for you to do. You further reported that you are able to twist or turn your head to the left or right but noted that this is limited due to a previous cervical fusion. You also noted that you arc able to concentrate without difficulty or restriction.

Investigator Lombardo noted that during your interview, you walked and

moved throughout your home without any noticeable limitations. Investigator Lombardo reported that your movements appeared to be fluid and smooth which was consistent with what was viewed during the activity check. Investigator Lombardo also reported that you did not need any assistance to walk or move around your home and you did not display any type of pain indicators. Investigator Lombardo also noted that you got up and down from a seated to standing position approximately three times during the entire interview process and stood for approximately two to three minutes at a time with no apparent balance issues. Investigator Lombardo further noted that you remained seated on a straight back chair throughout the majority of the one hour and forty minute interview. Investigator Lombardo reported that you did not appear to suffer from stiffness or increased pain and appeared to be comfortable as you sat as you did not shift in your seat, display facial expression or make noises consistent with being in pain.

During your May 21, 2008 telephone conversation with Investigator Lombardo, you informed that your only current treating provider is Dr. Hunsiker. During your June 18, 2008 interview, you indicated that during your typical day, you get up around 5:30 am, shower, get dressed and get ready, read the paper, and do things around the house. You indicated that in the event you have to go to the store, you do it first thing in the morning, and if you are making something for dinner, you try to get it done in the morning. You indicated that in the afternoon, you read and occasionally your granddaughter comes over. You indicated that in the evening you watch TV, and you typically go to bed around 10:00 pm and fall asleep around 11:00 pm.

As you know, we performed surveillance as a part of our investigation. We identified you as the person on surveillance as a part of the interview you participated in on June 18, 2008. In the surveillance, you demonstrated that you are capable of carrying items with both hands, bending slightly at the waist, placing items into your trunk, holding a pot with both hands and placing it into your trunk, driving five minutes to a private residence, conversing on your cell phone with your left hand while holding a car seat with your right hand for approximately two minutes, squatting toward the group and bending at the waist toward the ground while utilizing both hands to construct a snowman (packing snow together with both hands, rolling the ball of snow on the ground with both hands, packing snow onto the ball with both hands, retrieving handfuls of snow with both hands) for approximately ten minutes, bending at the waist to retrieve a stick, breaking the stick into pieces with both hands, pushing snow off of the stairway with both feet while ascending the stairway, driving to a local grocery store, pushing a shopping cart through the aisles with both hands for approximately twelve minutes, traveling to a local gas station, sitting and dining at a restaurant attached to a train station for approximately forty-five minutes, retrieving a beverage with

-6-

both hands, consuming food with both hands, retrieving your plate with both hands, holding your plate with your right hand and handing the plate to the person you were dining with prior to placing it onto the table, holding your purse with your right hand, a bag with your left hand, and an item with your left hand while walking through the train parking lot.

During your June 18, 2008 interview, we showed you the surveillance. After viewing the video, you identified yourself as the person in the surveillance and in contradiction to the first statement obtained at the time of your interview, you stated that the documented activities accurately depict your current level of functionality.

The functionality depicted in surveillance appears to be in direct contradiction to both your description of your reduced abilities and your physician's description of your reduced functionality. Based on these contradictions, we sent a letter to Celesta Hunsiker, MD, to clarify your current functional limitations. Dr. Hunsiker submitted a reply, dated July 15, 2008, indicating that you are capable of performing full-time work at what is defined as the sedentary and light physical demand levels.

We have concluded from the combination of all the medical information in your file, including Dr. Hunsiker's medical opinion regarding your current level of functionality, that you are able to perform full-time work at the sedentary and light physical demand levels as defined below:

SEDENTARY DUTY WORK:
No sitting longer than 1 to 3 hours at a time without the ability to get up and stretch or change positions. No more than occasional standing or walking (1-2 hours total per workday). No repetitive kneeling, crouching, stooping, reaching overhead, climbing stairs, twisting or turning. The ability to perform repetitive lifting, carrying, pushing or pulling no greater than 10 pounds occasionally. The ability to use upper extremities to perform frequent to constant fingering, feeling and/or handling.

LIGHT DUTY WORK:
The ability to stand and/or walk longer than 2 to 3 hours at a time with the ability to change positions. The ability to perform occasional sitting (1-2 hours total per workday). Frequent intermittent kneeling, crouching, stooping, reaching overhead, climbing stairs, twisting or turning. The ability to perform lifting, carrying, pushing or pulling up to 20 pounds occasionally and up to 10 pounds frequently. The ability to perform frequent to constant fingering, feeling and/or handling (bilateral upper extremities).

Based upon the above information, a Vocational Rehabilitation Clinical Case

Manager performed an employability analysis which showed that there are a number of occupations for which you are qualified within your physical capabilities. The salaries for these occupations are above 60% of your Indexed Pre-disability Earnings ($14.24 per hour), as required by the definition of Any Occupation. This listing of occupations is a sample of the occupations for which you are qualified:

1. Supervisor, Cashier, $20.92 per hour
2. Coin-Machine-Collector Supervisor, $20.92 per hour
3. Expediter, $18.57 per hour

Based on the above information, we have determined that you are not prevented from performing the essential duties of any occupation; therefore, you no longer meet the policy definition of Disability as of August 1, 2008. Accordingly, your claim has been terminated effective August 1, 2008 and no further benefits are payable beyond July 31, 2008.

Extensive documentation in the record supports Stowell's summary.

## THE DECISION ON APPEAL

On January 27, 2009, plaintiff submitted to defendant her appeal letter with additional documentation.  Plaintiff contended that she continued to be eligible for coverage because she "continued to suffer back pain and pain and weakness in her left leg," and that she "has been unable to return to gainful employment since November 12, 2002 due to the continuing symptoms of pain in her back and left leg."

On May 28, 2009, by letter from Appeal Specialist James A. Early, defendant advised that it had "determined that the decision to terminate [plaintiff's] claim was appropriate, and therefore the decision will stand."  The decision includes the following.

Review of Ms. Donohoe's file shows she became Disabled on November 12, 2002 due to low back pain for which she later had surgery. Once she completed the Elimination Period, benefits were approved through 24 months as she was unable to perform the Essential Duties of Your Occupation. As of May 13, 2005 in order to be eligible for continued LTD benefits, she must be Disabled from performing the Essential Duties of Any Occupation as defined above. Following a review of the available medical documentation, occupations were identified she is capable of performing and her claim was

closed on July 30, 2008.

You submitted an appeal in which you stated Ms. Donohoe's pain continues to be chronic and debilitating. You advised of her having suffered a myocardial infarction in 2005 and complaints of chest pain and shortness of breath in November 2008. You referred to an enclosed Functional Capacity Evaluation (FCE) which found Ms. Donohoe capable of sedentary work for four hours per day and stated that the surveillance showed Ms. Donohoe active on a good day and she suffered for the increase in activity in the following days. Along with your letter of appeal you provided a summary of an FCE which concluded that Ms. Donohoe was capable of performing sedentary demand work for four hours per day. You also provided a statement from Dr. Varma and copies of medical records from various providers.

Ms. Donohoe's entire claim file has been reviewed in full. Review of Ms. Donohoe's claim shows she filed a claim for benefits due to low back pain for which she had surgery. The medical record initially indicates significant impairments and notes examination findings of an abnormal gait and quadriceps atrophy. However, the record then shows improvement in her symptoms and by December 2007 she was no longer noted to have a limp and her gait was considered normal. Restrictions provided over the course of the claim also show an improved ability to function with less restrictive impairments. Surveillance conducted also revealed a more active individual exceeding the limitations of which we had been advised.

Review of the documentation provided on appeal shows that much of this record is for treatment and evaluations of Ms. Donohoe's conditions following the closure of her claim. Any conditions or worsening in her condition following July 30, 2008 would not be covered as her coverage ceased when her claim was closed. An FCE was provided which provided limitations on Ms. Donohoe's function, however there were no detailed results showing how the results of the FCE were arrived at. A copy of the full FCE report was requested and reviewed, however it remained unclear how limitations to sitting, standing and walking were determined. It was unclear to what extent testing was conducted to determine maximum functional abilities, and there was no discussion of how the 4 hour limit for working was determined. Review of the FCE results also shows the validity of results was borderline invalid and the results of the FCE should be considered conservative, suggesting a greater level of functional ability than noted in the conclusion. The results of the FCE also concluded that she was not capable of bending or kneeling, however she was seen to be bending and kneeling freely and without apparent limitation on surveillance. As the results of the FCE were not clearly explained, or otherwise did not appear supported by other evidence available within the file, the claim was referred for an independent medical records

review with MCMC.

MCMC assigned the claim to Dr. Marion who reviewed the available medical record and surveillance and then spoke with Dr. Hunsicker and Mr. Carter. Dr. Hunsiker advised she has not treated Ms. Donohoe since August 2008, however she felt Ms. Donohoe was functionally independent, fully ambulatory and should be working at a light to sedentary level. Mr. Carter advised that the results of his evaluation were based primarily on her observed activities during the evaluation, her self reported complaints of pain and statements that she was unable to work full time. He advised it was primarily a subjective assessment that determined her ability to work four hours per day on a sedentary basis. He did review the surveillance and subsequently concluded she should be capable of working at a sedentary to light level on a full time basis. She had normal muscle strength on manual muscle testing which is inconsistent with her reported ability to only lift 10 lbs occasionally. He also advised she exhibited only fair effort during testing and the four hour limitation was an under-estimation of her actual ability. Dr. Marion then provided his assessment stating his agreement with Dr. Hunsicker and Mr. Carter in that Ms. Donohoe would be capable of performing sedentary to light demand work on a full time basis. He also advised that the evidence does support functional impairment as of July 2008 with well documented lumbar spine and to a lesser extent cervical spine impairments, and as such, she would not be capable of performing at a level greater than light capacity work.

Ultimately we do not have medical documentation which supports impairment in Ms. Donohoe's ability to perform sedentary to light demand work and no statement has been provided from a physician which supports her inability to return to work. While the FCE provided with your letter of appeal did provide statements supportive of a greater level of impairment, when contacted Mr. Carter advised that the FCE only provided an underestimation of Ms. Donohoe's functional ability and noted that she only demonstrated fair effort during testing. The limitation to part time work was a subjective statement based on Ms. Donohoe's statements that she was not capable of performing full time work. Mr. Carter further advised that with further review he agreed with her ability to perform full time sedentary to light demand work.

The Employability Analysis completed July 29, 2008 identifies occupations which Ms. Donohoe is capable of performing. Moreover, they are within the physical restrictions agreed to by her physicians and exceed the earnings requirement under the policy. Therefore, the evidence on file shows that Ms. Donohoe is capable of performing the Essential Duties of Any Occupation.

You state in your letter of appeal that Ms. Donohoe was having a good day in surveillance and suffered in the following days, however despite being active

on February 24, 2008, she was again active on February 25, 2008 without noticeable impairment. You also reference her myocardial infarction in 2005 and state she has chest pain and shortness of breath. The medical record provided does not indicate when the symptoms of chest pain and shortness of breath began, only that she was experiencing such when she was seen on November 6, 2008. There is no report of her experiencing these symptoms when she was seen in March 2008 and August 2008 with Dr. Hunsicker. Notably when she was seen by Dr. Cavallaro she advised that she was told by her cardiologist that her chest discomfort was anxiety related and not cardiac in nature and she attained 10.5 METs in her stress test. Nothing has been provided which would support impairments as a result of a cardiac condition.

Based on the contractual provisions of The Golub Corporation Long Term Disability Policy, as well as the findings of Ms. Donohoe's physicians and the vocational information on file, we find no evidence to support Disability from Any Occupation.

The administrative record fully supports these findings.

Plaintiff then filed the instant action. She seeks recovery of unpaid past benefits and a determination that the Plan is obligated to pay her long term disability benefits in the future.

## THE MOTIONS

Defendant moves (Dkt. No. 12) for summary judgment on the ground that it properly terminated plaintiff's long-term disability benefits. Plaintiff cross-moves (Dkt. No. 18) for summary judgment reinstating her benefits.

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See id.* If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id.*

-11-

The burden is on the claimant to demonstrate disability within the policy definition.  *See Juliano v. Health Maint. Org.*, 221 F.3d 279, 287-88 (2d Cir. 2000).  Here, under the Plan, the burden was on plaintiff to demonstrate that she continued to be disabled from "performing one or more of the Essential Duties of Any Occupation."  Defendant determined that plaintiff was not disabled as of July 31, 2008.  Because the terms of the Plan granted defendant the discretion to interpret the policy and determine participant eligibility, it is undisputed that the "arbitrary and capricious" standard applies to this Court's review of defendant's decision.  *See Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009).  Under this standard, the Court can reverse the decision "only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law."  *Id.* at 83.

# DISCUSSION

**Conflict of Interest**

In arguing that defendant arbitrarily and capriciously terminated her waiver of premium benefits, plaintiff points to the fact that defendant both evaluates and pays out the benefits claims.  Defendant's dual role creates a conflict of interest that must be weighed as a factor in determining whether there it has abused its discretion.  *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).  "[W]hen judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one."  *Id.* at 117.  In discussing the weight to be given such a conflict of interest, the *Glenn* court stated:

> [A] conflict of interest ... should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for

example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.* (citations omitted).

On this issue, defendant relies on declarations from Bruce Luddy, defendant's Director of Litigation and Appeals, and James Early, Appeals Specialist.  These declarations demonstrate that defendant has taken active steps to reduce potential bias and to promote accuracy, including separating the claims department from the appeals department; providing no incentives to its decision-makers to deny benefit claims; and maintaining the claims and appeals departments as completely separate business units from the financial and underwriting departments.  *See, e.g., Fortune v. Group Long Term Disability Plan*, 637 F.Supp.2d 132, 144 (E.D.N.Y. 2009), *aff'd* 391 Fed.Appx. 74 (2d Cir. 2010).  Plaintiff adduced no evidence suggesting that the conflict of interest actually affected the benefits decision, that defendant has a history of biased claims administration, or that the medical evidence was so weak as to call into question the legitimacy of defendant's decision.  *See Fortune*, 391 Fed.Appx. at 79.  Plaintiff points out that defendant made a settlement offer in 2005; this offer, however, without more, does not support a finding that financial considerations affected defendant's benefit decisions, particularly because defendant continued plaintiff's benefits for another three years.  Nor do the circumstances otherwise suggest a substantial likelihood that the conflict affected the benefits decision.  Accordingly, the Court finds that the conflict of interest is a factor of little significance in reviewing the termination of plaintiff's benefits.

**Administrative Decision**

Defendant's administrative decision, signed by Claims Specialist Jeanne M. Stowell,

-13-

discussed in detail the evidence in the file and concluded that plaintiff was not disabled within the terms of the policy as of July 31, 2008.  Ms. Stowell noted that on July 2, 2007, medical records from plaintiff's treating physician, Celesta Hunsiker, M.D., reflected plaintiff's medical history of coronary artery disease status post a myocardial infarction, hypertension, hyperlipidemia, migraine headaches, degenerative disc disease of the cervical and lumbar spine status post a lumbar fusion in February 2003, lumbar decompression in April 2003, and revision of a lumbar decompression in June 2005.  Dr. Hunsiker's records reported plaintiff's symptoms of back pain with radiation and exam findings of chronic back pain and limited range of motion.

Ms. Stowell also reviewed the medical records of Rudolph Buckley, M.D. and Joseph Catania, M.D., both of whom had treated plaintiff for pain.  Plaintiff had ceased treating with Dr. Buckley in 2006 and Dr. Catania in May 2007 and did not anticipate any future treatment with them. On May 21, 2008, plaintiff informed defendant that Dr. Hunsiker was her only current treating provider.

Defendant contracted with an investigation firm, which conducted video surveillance of plaintiff's activities on February 24 and 25, 2008.  Ms. Stowell reviewed the video footage, which is part of the record.

The administrative record also contained the report by defendant's Investigator Paul R. Lombardo regarding his interview of plaintiff in her home on June 18, 2008.  Mr. Lombardo's report included his own observations of plaintiff's activities during the interview.  Based on the interview, Mr. Lombardo prepared a six-page "Continuing Disability Statement" which plaintiff reviewed and signed.  Mr. Lombardo also showed plaintiff the surveillance video.

Ms. Stowell's administrative decision, dated July 31, 2008, stated:

-14-

> The functionality depicted in surveillance appears to be in direct contradiction to both your description of your reduced abilities and your physician's description of your reduced functionality. Based on these contradictions, we sent a letter to Celesta Hunsiker, MD, to clarify your current functional limitations. Dr. Hunsiker submitted a reply, dated July 15, 2008, indicating that you are capable of performing full-time work at what is defined as the sedentary and light physical demand levels.
>
> We have concluded from the combination of all the medical information in your file, including Dr. Hunsiker's medical opinion regarding your current level of functionality, that you are able to perform full-time work at the sedentary and light physical demand levels[.]

Thus, the administrative decision was based primarily on the medical information in the file, particularly the opinion of plaintiff's sole treating physician, Dr. Hunsiker, that plaintiff was able to perform full time sedentary and light duty work.[1] There was no medical evidence that plaintiff continued to be disabled. Dr. Hunsiker's conclusion was supported by the surveillance video and Mr. Lombardo's observations in the June 18, 2008 interview. These elements of proof weakened the probative value of plaintiff's subjective reports of pain and supported the decision to terminate benefits.

Based on its determination that plaintiff was able to perform full-time work at the sedentary and light physical demand levels, defendant discontinued her disability benefits as of July 31, 2008. Plaintiff filed an administrative appeal.

**Decision on Appeal**

By decision dated May 28, 2009, defendant upheld the the administrative determination to terminate benefits. The decision on appeal, written by Appeal Specialist James A. Early,

---

[1]

Plaintiff's counsel incorrectly represents that Dr. Hunsiker did not specify that plaintiff was capable of full time employment. *See* Dr. Hunsiker's notations and signature dated July 15, 2008, on Jeanne M. Stowell's July 3, 2008 letter requesting her "opinion in regard to **full-tim**e work capacity (**8 hours** per day)." (Emphasis added.)

reviewed the record evidence, including additional evidence submitted by plaintiff in support of

her appeal.  This additional evidence included a letter by Prabhat K. Varma, M.D., dated

November 6, 2008, advising that plaintiff had "symptoms of chest pains and shortness of breath"

and "multiple risk factors for coronary artery disease," and that she was scheduled to undergo a

"stress Cardiolite."  Dr. Varma's office note of the same date stated that plaintiff had a

myocardial infarction in 2005 and that "over the last month or so she has been experiencing chest

heaviness, as well as shortness of breath on minimal exertion without any radiation of pain."  The

stress test was performed on November 17, 2008.  Brian J. Gaffney, M.D. of Central New York

Cardiology reported that the result was normal.

      The appeal record also shows that Dr. Hunsiker saw plaintiff on August 4, 2008.  She

referred plaintiff for an orthopedic consult which took place on November 11, 2008 at Slocum-

Dickson Medical Group.  The report of that consult, signed by Rudolph Buckley, M.D., who had

treated plaintiff for lower back pain until 2006, recommended that plaintiff undergo nerve

conduction and EMG studies, which were performed the same day.  Dr. Buckley saw plaintiff on

December 17, 2008, reviewed the results of the nerve conduction and EMG studies, and observed

that the neurologist noted "left knee reflex was absent, as well as atrophy of the quads.  EMG's

noted a chronic denervation and reinnervation changes of the left L3 and L4 segments, and that

the rest of the study was overall normal."  Dr. Buckley recommended left L5-S1 foraminal

blocks.  Neither Dr. Buckley's report nor the attached report of the nerve conduction and EMG

studies explained the significance of the reported conditions or how they might affect plaintiff's

ability to work.

      At Dr. Buckley's request, plaintiff was seen by Jafar Saddiqui, M.D. at APMP Spinal and

Skeletal Pain Medicine on January 13, 2009.  Dr. Saddiqui's noted that plaintiff reported "deep boring pain in the left side of her low back that can radiate all the way into her left foot [and that] is exacerbated by sitting, standing and walking."  Dr. Saddiqui's notes referred to an October 8, 2008 MRI which was not included in the record.  According to Dr. Saddiqui, the MRI revealed minimal disc bulging at L1-L2 with facet hypertrophy; no abnormality at L2-L3; fusion of the L3-L4 and L4-L5 disc spaces (from the 2003 surgery); and minimal disc bulging at L4-L5 and  L6-S1.  There is nothing from Dr. Saddiqui or any other medical provider explaining the significance of these MRI results with respect to plaintiff's ability to perform full time sedentary or light duty work.  At Dr. Saddiqui's recommendation, plaintiff underwent selective nerve root injections and reported a limited degree of pain relief.

Plaintiff ceased treating with Dr. Hunsiker at some point after the August 4, 2008 visit. Her new primary care physician, Diane M. Cavallaro, M.D., saw plaintiff on January 9, 2009.  Dr. Cavallaro noted plaintiff's complaints of chest pain and discomfort.[2]

Plaintiff also submitted a report of a functional capacity examination ("FCE") performed on December 8, 2008 by Kennett T. Carter, P.T. at Fitness Forum.  Carter's report stated that plaintiff was "capable of work at the Sedentary Physical Demand Level for a 4.0 hour day."  The report also stated that plaintiff "exhibited symptom/disability exaggeration behavior by our criteria" and that she passed 19 of 27 validity criteria, "which suggests fair effort and valid results."  In his decision on the administrative appeal, Early noted that it was "unclear how limitations to sitting, standing and walking were determined" and "there was no discussion of

---

[2]

According to Dr. Cavallaro's notes, she told plaintiff that, as an internist, she would address plaintiff's medical issues but not any chronic pain or back issues.

how the 4 hour limit for working was determined."  Early also observed that, although the FCE

concluded that plaintiff's pain prevented her from bending or kneeling, "she was seen to be

bending and kneeling freely and without apparent limitation on surveillance."  Philip Marion,

M.D., the independent medical consultant retained by defendant on the appeal, stated that he

spoke with Carter and that, after viewing the surveillance video, Carter said that plaintiff "should

be functionally capable of working at least at the light to sedentary occupational level on a full-

time basis."  Dr. Marion added that Carter "indicated the claimant exhibited only fair effort

during testing and the four-hour sedentary restriction was an under estimation of her actual

occupational capacity."

On the appeal, defendant referred the file to MCMC LLP, an independant review

organization, for review by an independent medical consultant.  MCMC retained Philip Marion,

M.D., board certified in physical medicine and rehabilitation/pain medicine, to perform the

review.[3]  In his report, dated May 22, 2009, Dr. Marion noted that he interviewed plaintiff's

treating physician Dr. Hunsiker, who told him that plaintiff "should be working."  Dr. Marion's

report discussed plaintiff's medical history in depth.  He observed that there was significant

clinical evidence supporting the permanent restriction to light capacity occupational activities.

He noted, however, that "[t]he subjective report of [plaintiff's] severe pain and functional

capacity are inconsistent with the clinical findings that demonstrate an otherwise normal

neurological examination."  He added that her subjective reports of pain are also "inconsistent

with her observed functional independence" depicted in the surveillance video.  He concluded:

---

[3]

Dr. Marion certified that any affiliation he has or may have had with defendant "at no time constituted or
constitutes more than five percent of my gross annual income."  He added that his compensation for
performing the record review is not dependent on the outcome of the case.

-18-

"Based on the enclosed clinical information available for review from a physical medicine and rehabilitation/pain management perspective, there remains no objective impairment precluding the claimant from working on a full-time basis at the light capacity occupational level."

On reviewing defendant's conclusion on appeal that there was "no evidence to support Disability from Any Occupation," the Court observes that plaintiff did not present any objective documentation of her alleged inability to perform full time sedentary or light duty work as of July 31, 2008, other than the FCE conducted by Carter. Carter reports limitations in plaintiff's physical abilities, such as lifting, and thus appears to support a restriction to sedentary or light duty work. Carter does not, however, disclose how he determined the four-hour limit. As Early observed, "the results of the FCE were not clearly explained, or otherwise did not appear supported by other evidence available within the file was determined."  Defendant's reliance on the reports by Drs. Hunsiker and Marion and the other evidence in the file rather than on the FCE is reasonable.

None of the physicians plaintiff consulted after the denial of benefits stated that she was disabled due to low back and leg pain. Plaintiff also relied on Dr. Varma's letter noting that plaintiff reported chest pain and shortness of breath; however, neither Dr. Varma nor any other physician opined that plaintiff's cardiac condition, considered alone or in conjunction with her leg and back pain, rendered her disabled.

Certainly plaintiff's subjective report of pain is an important factor.  Here, however, Dr. Hunsiker, who had been plaintiff's primary care physician since 2005 and was her sole treating physician as of July 31, 2008, concluded that plaintiff was capable of full time sedentary or light duty work despite her complaints of pain.  Also, Dr. Marion found that plaintiff's subjective reports of severe pain and limited functional capacity "are inconsistent with the clinical findings

-19-

that demonstrate an otherwise normal neurological examination."  He added that her subjective reports of pain are also "inconsistent with her observed functional independence" depicted in the surveillance video.  Reviewed in its entirety, the appeal record fully supports defendant's determination that plaintiff was capable of full time sedentary and light duty employment as of July 31, 2008.

**Procedural Irregularities**

Plaintiff contends that there were procedural irregularities in the handling of her claim that warrant summary judgment in her favor.  The Court has already determined that the conflict of interest is a factor of little significance.  Nor is the fact that on July 19, 2004 plaintiff was approved to receive Social Security benefits a factor of significance, due to the passage of four years between that approval and defendant's termination of benefits under the Plan.  The Court also rejects plaintiff's contention that defendant was required to obtain an independent medical examination or FCE; rather, defendant properly considered the medical records and FCE submitted by plaintiff, as well as Dr. Marion's opinion based plaintiff's records.

Plaintiff also argues that the decision to terminate benefits in the absence of a change in her condition was arbitrary and capricious.  *See Connors v. Connecticut Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2nd Cir. 2001); *Smith v. Novelis*, 2009 WL 3164798, *14 (N.D.N.Y. Sept. 29, 2009).  Here, however, the record does not show an arbitrary decision to terminate benefits in the absence of evidence of a change in plaintiff's condition.  Rather, the record shows a rational decision to terminate benefits after re-evaluation of plaintiff's condition based on recent medical evidence that plaintiff was able to work and a lack of evidence that she was not able to work.  In the decision on appeal, Early wrote:

-20-

> The medical record initially indicates significant impairments and notes examination findings of an abnormal gait and quadriceps atrophy. However, the record then shows improvement in her symptoms and by December 2007 she was no longer noted to have a limp and her gait was considered normal. Restrictions provided over the course of the claim also show an improved ability to function with less restrictive impairments. Surveillance conducted also revealed a more active individual exceeding the limitations of which we had been advised.

The medical evidence fully supports defendant's conclusion that, due to the apparent improvement in her condition, plaintiff was capable of full time sedentary or light duty work as of July 31, 2008.  In particular, Dr. Hunsiker, plaintiff's only treating physician, expressly stated that plaintiff was capable of full time sedentary or light duty work.  Plaintiff was no longer being treated for her pain or any other condition by any other physician, having ceased treatment with Dr. Buckley in 2006 and Joseph Catania, M.D. in May 2007.  The decision on appeal was further supported by the fact that, despite recent testing (nuclear stress test, nerve conduction test, EMG, and MRI) no physician stated that she was unable to perform full time sedentary or light duty work

The Court also rejects plaintiff's contention that defendant arbitrarily "cherry-picked" the medical evidence that favored termination rather than taking into account plaintiff's entire medical history.  *See, e.g., Magee v. Metropolitan Life Ins. Co.*, 632 F.Supp.2d 308, 321 (S.D.N.Y. 2009).  This argument fails because at the time of termination there was no statement from any physician that plaintiff was incapable of working full time sedentary or light duty work.  Nor did Dr. Hunsiker or Dr. Marion ignore the medical evidence of plaintiff's limitations or her accounts of pain; rather, they took them into account in concluding that, while plaintiff could work full time, she should be limited to sedentary or light duty work.  Plaintiff relies on the Carter's statement in the FCE that plaintiff could work only four hours per day.  The FCE,

however, did not explain how the four-hour limitation was reached and was ambiguous regarding the validity of the results (*i.e.*, stating that plaintiff exhibited "symptom/disability exaggeration" and fair effort, yet concluding that the results were valid).  Also, as Early observed, the reliability of the FCE was cast into doubt by the fact that it "concluded that [plaintiff] was not capable of bending or kneeling, however she was seen to be bending and kneeling freely and without apparent limitation on surveillance."[4]  The Court finds that defendant did not act arbitrarily in placing relatively little reliance on this report.  As for plaintiff's cardiac condition, there was no evidence that it limited her from performing full time sedentary or light duty work.

The Court is aware that "the subjective element of pain is an important factor to be considered in determining disability." *Connors v. Connecticut Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir. 2001).  Here, however, plaintiff's credibility was undermined by the fact that her own physician, Dr. Hunsiker, who had been treating her since 2005, found that plaintiff was capable of full time sedentary or light duty work.  Also, as noted, plaintiff ceased  treatment for pain with Dr. Buckley in 2006 and Dr. Catania in May 2007.  Moreover, Dr. Marion stated his opinion that plaintiff's reports of pain were "inconsistent with the clinical findings that demonstrate an otherwise normal neurological examination" and "inconsistent with her observed functional independence" depicted in the surveillance video.  Similarly, as Early observed, although the FCE concluded that plaintiff's pain prevented her from bending or kneeling, "she

---

[4]
Plaintiff objects to any reliance on Dr. Marion's hearsay statements that, after viewing the surveillance video, Carter told Dr. Marion that plaintiff "should be functionally capable of working at least at the light to sedentary occupational level on a full-time basis."  Dr. Marion added that Carter "indicated the claimant exhibited only fair effort during testing and the four-hour sedentary restriction was an under estimation of her actual occupational capacity."  It is not necessary, however, to resort to Carter's statements to Dr. Marion to find that defendant did not act arbitrarily in placing little reliance on the FCE.

-22-

was seen to be bending and kneeling freely and without apparent limitation on surveillance."  The probative value of plaintiff's subjective reports of pain is also undermined by a comparison of her activities in the surveillance video with her own statement, signed after her interview with Investigator Lombardo on June 18, 2008.[5]  Moreover, plaintiff's complaints of pain were taken into account in determining that she was not capable of performing medium duty work.  On review of the entire record, including the surveillance video, the Court sees no basis to reject the conclusions of Drs. Hunsiker and Marion that, while her pain may have prevented her from performing medium duty work, plaintiff was capable of full time sedentary or light duty work as of July 31, 2008.

Ample evidence supports defendant's conclusion that plaintiff failed to demonstrate that she was disabled within the meaning of the policy as of July 31, 2008.  Defendant's decision was not arbitrary, capricious, without reason, unsupported by substantial evidence, or erroneous as a matter of law.  Viewing the evidence in the light most favorable to plaintiff, the Court holds that defendant has demonstrated that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Plaintiff's motion is denied and the amended complaint dismissed.

**CONCLUSION**

It is therefore

---

[5] For example, plaintiff stated that her gait is slow and she walks with a limp "all the time"; that she is able to sit for a maximum of 20 minutes, resulting in a pain level of 10; that after standing for 15 minutes she must sit down because she experiences a pain level of 10; that when she bends or flexes forward to touch her knees she experiences a pain level of 10 in her lower back; that she can squat to sit in a chair but not to the floor because she would "fall over" due to left leg weakness, and would need assistance to get back up; and that she has difficulty getting in and out of a vehicle.  By comparison, in the surveillance video she is seen walking briskly with no limp, sitting in a restaurant for about 45 minutes, and standing, bending, and squatting to build a snowman for about ten minutes.

ORDERED that the motion by defendant Hartford Life Insurance Company for summary judgment (Dkt. No. 12) is granted; and it is further

ORDERED that the motion by plaintiff Michelle M. Donohoe for summary judgment (Dkt. No. 18) is denied; and it is further

ORDERED that the action is dismissed.

IT IS SO ORDERED.

Date;   March 18, 2011

Norman A. Mordue
Chief United States District Court Judge